No. 3486.

Second Circuit

(Second Division)

———

PUGH v. EYLERS

———

(June 11, 1931. Opinion and Decree.)

Pugh, Grimmet & Boatner, of Shreveport, attorneys for plaintiff, appellee.

Thatcher, Browne, Porteous & Myers and J. T. Carpenter, of Shreveport, attorneys for defendant, appellant.

CULPEPPER, J. This is a suit by plaintiff to recover of defendant the sum of $261 for hauling which plaintiff alleges he did for defendant in December, 1925, and January, 1926. From a judgment in favor of plaintiff in the sum of $201, with legal interest from January 22, 1926, until paid, defendant appealed.

Plaintiff alleges he furnished work and labor "unto" defendant at various times between December 28, 1925, and January 22, 1926, aggregating $261, as per itemized statement attached. The statement attached shows the alleged debt consisted of hauling with teams at so much per day. There is no dispute as to the fact that the hauling was performed, and that the amount charged for same is correct.

Defendant, in answer, enters a general denial. No special defenses are pleaded. The defense actually made upon the trial is one of agency, in that defendant contends that he was only representing Kaplan & Sons of Monroe when he contracted for the hauling to be done, and that therefore he is not liable. Counsel for plaintiff objected to this line of testimony for the reason that such testimony constituted a special defense which should have been specially pleaded. The testimony was admitted subject to the objections. The objections, we think, were good and should have been sustained by the court, because this particular defense is special and should have been pleaded. The answer makes no mention whatever of such defense. Plaintiff's petition does not mention anything about defendant as having been an agent for some one else. That fact would make it all the more necessary that defendant set it up in his answer.

"When defendant in an action ex contractu only denies the several allegations of plaintiff's petition, he cannot be allowed at the trial of the cause to prove by evidence duly objected to that he acted for another and not for himself. Agency as defense against personal liability must be specially pleaded." New Orleans Brewing Co. v. Goldstein, 12 Orl. App. 323; Mandate, paragraph 103, vol. 8, Merrell La. Digest; Cotton v. Union Bank of Louisiana, 15 La. 369.

Even taking the testimony, however, of defendant in support of his claim of agency along with the other testimony in the record, we still do not think it would avail defendant anything.

On or about January 19, 1923, a Mr. Kaplan, of Kaplan & Son, of Monroe, came over to the Continental Asphalt & Petroleum Company lease in the oild field near Harmon, La., and purchased from that company a lot of junked pipe; Kaplan obligating himself to remove the pipe within thirty days. Defendant, it seems, had charge of the lease, was present and assisted in making the sale to Kaplan. Kaplan got defendant to have the pipe hauled from the leased premises to Harmon station for shipment to Kaplan & Son at Monroe, and then he returned to Monroe. After Mr. Kaplan left, Mr. Eylers, the defendant herein, went to see Mr. Loftin, who had charge of plaintiff's teams and wagons, with the view of having the

pipe hauled to the station. Defendant testifies he told Mr. Loftin that Mr. Kaplan had bought the pipe, was moving it off of the lease, and he wanted to get Loftin to haul it for Kaplan; that Loftin asked defendant if he knew anything about Kaplan and he (defendant) told him, Kaplan "was a pretty responsible man," whereupon Loftin said he would do the hauling. Defendant says he then told Loftin he (defendant) was going to have charge of the hauling and loading of the pipe for Mr. Kaplan. Defendant admitted, however, that he himself contracted with Mr. Loftin to have the pipe hauled.

Mr. Loftin, who was admittedly plaintiff's agent in the transaction, testified that defendant came to him and wanted him to haul the pipe for Kaplan & Son of Monroe. He says he told defendant he could not do so because he did not know anything about Kaplan & Son. He says defendant came back the next day and on that occasion they came to an agreement whereby he (Loftin) would do the hauling and defendant would be responsible for the payment for same. Loftin says he did not see Mr. Kaplan at all. Loftin was asked:

"Q. Did you deal with Mr. Kaplan at all?

"A. Dealt with Mr. Eylers—for me to do that hauling, you see.

"Q. For him personally?

"A. He would see that I was paid for the hauling of the pipe.

"Q. I believe you said he would be responsible for the pipe?

"A. He said it was sold to M. Kaplan & Son at Monroe, wanted me to do the hauling, I told him I would not do it.

"Q. Then later went ahead and hauled it?

"A. After he came back the next morning, made the agreement that he would be responsible for it.

"Q. That he would be responsible for it?

"A. Yes.

"Q. That if Mr. Kaplan didn't pay he would see you got your money?

"A. He didn't mention Mr. Kaplan.

"Q. Didn't you understand that was what he meant?

"A. Not that I know of, Mr. Kaplan was not mentioned, it was not mentioned at all."

From the evidence we think it fair to conclude that defendant obligated himself primarily to pay for the hauling, and that it does not fall within the class of cases wherein one person promises to pay in the event some third person does not do so. Obviously it was not a promise by defendant to pay if Kaplan & Son did not. It was an independent obligation on defendant's part regardless of conditions.

Plaintiff testified that defendant promised on several subsequent occasions to pay him, and did in fact pay plaintiff $60 on the account, which reduced the amount down to $201. Mr. May and Mr. Loftin both testified they had heard plaintiff ask defendant to pay him, and that defendant said he would. The witness May was the one who actually did the hauling.

Counsel for defendant says in brief that:

"There is only one strong point on which this appeal is based, that is whether or not the hauling was done for Mr. Eylers, the defendant in this suit, or for Kaplan & Son, the owners of the equipment being hauled."

He says the suit is really a contest between Mr. Loftin's version of the agreement and that of Mr. Eylers. He refers to Mr. Eylers' testimony at page 12 of testimony as stating clearly Mr. Eylers' position in the transaction.

We have already stated in substance defendant's testimony referred to by counsel, unless it be that in regard to the bill for the hauling and his denial of promise to pay same. Eylers was asked by counsel if

Mr. Pugh, plaintiff, sent him the bill, and he answered:

"I made out the bills for Mr. Pugh myself—there is Mr. Kaplan's account, I made it out myself."

Eylers says Pugh never did send him the bill for the hauling. He also says he never did promise to pay the bill, but asked Pugh to go with him over to Monroe, when he (Eylers) went over there to enter suit against Kaplan for the pipe. It seems that Eylers had to sue Kaplan & Son for the price of the pipe, and that was the occasion for his going to Monroe. Eylers says the $60 which Pugh testified he had received from Eylers was a part of the debt claimed by the latter.

Defendant, it will be seen, makes no mention of having gone to Loftin the second time to see about getting the hauling done. Loftin, however, testifies that defendant came to him twice.

Defendant, however, does not say he did not go to Loftin a second time. While Loftin admits that defendant told him the pipe had been sold to Kaplan & Son, Loftin insists that he would not agree to do the hauling until defendant agreed to become personally responsible. We think defendant did in fact become personally and primarily responsible for the hauling.

If it be a fact, as counsel for defendant contends, that the pipe was being hauled for Kaplan & Son, that fact would not necessarily show that defendant could not and did not bind himself primarily and unconditionally to pay for the hauling. In the case of Watson Bros. v. Jones, 125 La. 249, 51 So. 187, cited and relied upon by counsel, the court expressly held that:

"Two persons may make themselves liable, primarily (and not, necessarily, in the relation of principal and surety) for the same debt."

The court further says:

"If it (the evidence) shows that defendant was to pay only in the event that Pierson should not, it would have to be disregarded, * * * since it would, in that case, go to prove a promise to pay the debt of another."

Even if Kaplan & Son were obligated to pay for the hauling, that was an obligation as between themselves and defendant, which would in no wise affect plaintiff's right to hold defendant to his obligation to plaintiff. Plaintiff dealt directly with defendant. He took no chances on Kaplan & Son. Defendant had to become, and we think did become, primarily and unconditionally responsible to plaintiff before plaintiff would agree to do the work. This evidently was the view the lower court took, after hearing the witnesses, and we find no error in thus holding, notwithstanding the testimony of defendant.

It will be noted here that the testimony of plaintiff and his two witnesses, Loftin and May, that defendant had promised to pay plaintiff, is not to be considered as binding on defendant as a promise to pay the debt of Kaplan & Son, but is considered as corroborative of plaintiff's contention that the debt was the debt of defendant himself, which he felt obligated to discharge.

The plea of prescription filed evidently was abandoned by defendant, since it has not been urged in argument nor in brief. The testimony shows the hauling was finished on January 22, 1924, and the suit filed December 27, 1926, which was within the three-year prescriptive period, hence the prescription would not apply, and the plea is therefore overruled.